| .GUIDRY, J.
This action commenced with a notice of proposed relocation sent by Terri Lynn Peterson Richardson, now Blackmar, to her former husband, George Gregory Richardson, informing him of her intent to relocate and establish her legal residence with their children in Naperville, Illinois. The trial court held that Terri Richardson Blackmar could relocate to Naperville, Illinois, with the Richardson’s minor child, Aaron Richardson, but found that in the event she decided to relocate to Illinois, the minor child, Peter Richardson, would remain in Louisiana and reside with his father, George Gregory Richardson. We vacate and remand.
FACTS AND PROCEDURAL HISTORY
George Gregory Richardson and Terri Lynn Peterson, were married on February 20, 1987, in Tucker, Georgia. Thereafter, they established their matrimonial domicile in East Baton Rouge Parish. Two children were born of the marriage, namely, Peter Gregory Richardson, born Sep *1266 tember 22, 1987, and Aaron William Richardson, born November 1,1994.
The parties separated in April of 1996, and subsequently entered into a consent judgment wherein they agreed to share the joint care, custody and control of the minor children, with Mrs. Blackmar designated as the domiciliary parent of both children. The parties agreed on support and reserved visitation rights with the minor children to Mr. Richardson and his mother on alternate weekends, holidays and two months during the summer.
On October 28, 1996, the parties were granted a divorce. Shortly thereafter, Mr. Richardson, who is self-employed and owns an engineering consulting firm, moved to Atlanta, Georgia. During this time, visitation went well, and there were no problems indicated by either party.
^Subsequently, because Mrs. Blackmar was concerned about the educational needs and the falling grades of her son, Peter, the older minor child, she agreed to allow Peter to live with his paternal grandmother and attend school in Columbia, Louisiana, for the fourth-grade school term. During this time, Mr. Richardson moved his business to Columbia, near his mother and Peter. At the end of the 1996-97 school year, and upon Mrs. Blackmar’s marriage to Guy Blackmar, Mr. Richardson filed a petition to change custody and for support. After a custody hearing, the trial court maintained Mrs. Blackmar as the domiciliary parent.
In July of 1999, Mr. Richardson filed a second suit to change custody during the school year and to have Peter’s educational status evaluated. After a status conference, the trial court found that Mr. Richardson’s rule would not meet the standard for a change in custody set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), and continued the matter until July 30, 2000, ordering mediation and counseling for Peter Richardson.
On November 8, 1999, Mrs. Blackmar notified Mr. Richardson, by certified mail, of her intent to relocate with the children from Baton Rouge, Louisiana, to Naper-ville, Illinois, because of a job promotion and transfer of her husband. On January 3, 2000, Mr. Richardson filed a petition opposing the relocation. In response, Mrs. Blackmar filed peremptory exceptions raising the objections of no cause of action and prescription. On February 28, 2000, the trial court overruled Mrs. Blackmar’s exceptions and her oral motion to dismiss made at the hearing on the exceptions.
On May 1, 2000, the trial court heard arguments regarding Mrs. Blackmar’s planned relocation from Louisiana to Illinois on June 1, 2000. On May 18, 2000, the trial court ordered that Mrs. Blackmar could relocate to Illinois with the minor child, Aaron, but stated that custody of Peter would [¿be awarded to Mr. Richardson if she chose to relocate. The court further decreed that if Mrs. Blackmar did not relocate, the previous plan of custody would remain in effect. Mrs. Blackmar appeals that judgment and urges six assignments of error:
1) the trial court erred in denying Terri Blackmar’s peremptory exceptions raising the objections of no cause of action and prescription and her oral motion to dismiss;
2) the trial court erred in excluding the parties from hearing the testimony of Dr. Alan Taylor;
3) the trial court erred in prohibiting counsel for the parties from discussing the testimony of Dr. Taylor with their clients;
4) the trial court erred in prohibiting Terri Blackmar from relocating to Naper-ville, Illinois with Peter Richardson;
5) the trial court erred in splitting custody of Aaron and Peter Richardson;
6) the trial court erred in finding that Terri Blackmar was planning to move to Illinois without the benefit of a job.
*1267 DISCUSSION
Initially, Mrs. Blackmar contends the trial court erred in denying her peremptory exceptions raising the objections of no cause of action and prescription, and her oral motion to dismiss. Mrs. Black-mar argues that because her notice of relocation was sent to Mr. Richardson by certified mail and included all of the information required by LSA-R.S. 9:355.4, and Mr. Richardson failed to file an opposition to her notice of relocation within the twenty-day delay provided in LSA-R.S. 9:355.7 and 9:355.8, the exceptions she urged should have been sustained. Mrs. Black-mar notes that Mr. | sRichardsoris petition opposing the relocation was filed January 3, 2000, well outside of the twenty-day delay.
In support of this argument, Mrs. Black-mar introduced into evidence the certified letter she sent to Mr. Richardson, dated November 8, 1999, notifying him of her intent to relocate to Naperville, Illinois, with their children. Also included in the record is the return receipt signed by Mr. Richardson on November 24, 1999. When' a parent is entitled to the primary custody of the children, in order to relocate the children’s principal residence, the parent entitled to primary custody shall notify the other parent of the proposed relocation by mailing notice of the proposed relocation by registered or certified mail, return receipt requested, to the last known address of the other parent no later than either the sixtieth day before the date of the intended move or proposed relocation, or the tenth day after the date that the parent knows the information required, if the parent did not know and could not reasonably have known the information in sufficient time to comply with the sixty-day notice and it is not reasonably possible to extend the time for relocation of the child. LSA-R.S. 9:355.3, LSA-R.S. 9:355.4(A). The notice shall include the specific address, if known, of the new address, the mailing address if not the same, the home telephone number, if known, the date of the intended move or proposed relocation, a brief statement of the specific reasons for the proposed relocation of a child if applicable and a proposed revised visitation schedule. LSA-R.S. 9:355.4(B). The relocating parent shall also have a continuing duty to provide the required information as the information becomes known. LSA-R.S. 9:355.4(C). Moreover, the primary custodian of the children may relocate the principal residence of a child after providing the notice required in LSA-R.S. 9:355.3 and 355.4, unless the parent entitled to notice initiates a | ^proceeding seeking a temporary or permanent order to prevent the relocation within twenty days after the receipt of the notice. LSA-R.S. 9:355.7.
Thus, in order to prevent relocation, a parent must initiate a summary proceeding objecting to a proposed relocation of the principal residence of a child within twenty days after receipt of notice and seek a temporary or permanent order. LSA-R.S. 9:355.8. However, failure to file this objection within the twenty-day delay provided in the statute does not forever preclude the parent entitled to notice from opposing the relocation; he or she merely forfeits the opportunity to prevent their immediate relocation by means of a summary proceeding. Thus, this assignment of error is without merit.
In her next two assignments of error, Mrs. Blackmar asserts the trial court erred in hearing the testimony of Dr. Alan Taylor, a clinical psychologist, in camera and prohibiting the attorneys from discussing the testimony of Dr. Taylor with their respective clients. Mrs. Black-mar contends testimony taken in camera is inconsistent with the normal right of a petitioner to cross-examine witnesses and infringes upon her fundamental right to a full and fair hearing, including the right of each party to be apprised of all of the evidence upon which a factual adjudication rests, and the right to examine, explain, and/or rebut all such evidence.
*1268 A parent who seeks to remove his or her child from the jurisdiction of the court has the burden of proving that: 1) there is good reason for the move, that is, that the move is made in good faith; and 2) the move is in the child’s best interest. LSA-R.S. 9:355.13; Pittman v. Pittman, 94-952, p. 3 (La.App. 5 Cir. 3/15/95), 653 So.2d 1211, 1212, writ denied, 95-1526 (La.9/29/95), 660 So.2d 881, Franz v. Franz, 98-3045, p. 7 (La.App. 4 Cir. 6/16/99), 737 So.2d 943, 946. In reaching its decision regarding a proposed | ^relocation, the court is required to consider the following factors pursuant to La. R.S. 9:355.12:
(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child’s life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child’s preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8)Any other factors affecting the best interest of the child.
Although the court, pursuant to La. R.S. 9:355.8(B), may appoint an independent mental health expert to render a determination as to whether the proposed relocation is in the best interest of the children, according to the record, Dr. Taylor’s appearance in court was pursuant to a subpoena issued by Mr. Richardson. The record also reveals that Dr. Taylor’s role in this proceeding was that of a counsel- or/therapist, not as an evaluator for custody purposes.
[ sin considering the factors mentioned above, the trial judge heard the testimony of both Mr. and Mrs. Blackmar and Mr. Richardson, as well as expert testimony from Dr. Taylor. According to the record, Dr. Taylor’s testimony was taken in chambers, in the presence of a court reporter and both parties’ attorneys. The parties were not allowed to be present. Moreover, the trial judge ordered, under penalty of contempt of court, that no testimony of Dr. Taylor be disclosed or discussed with the parents or the child. Counsel for Mrs. Blackmar noted her objection for the record.
In a custody case in which the trial court prohibited counsel from discussing and reviewing with their client psychiatric reports and the children’s testimony and failed to allow the parent to be present during the children’s testimony, the appellate court found the ruling denied fundamental due process to the party who had no opportunity to review the report and to cross-examine the psychiatrist. Fuge v. Uiterwyk, 94-1815 (La.App. 4 Cir. 3/29/95), 653 So.2d 707, 712. The judgment was reversed because there was no other credible supportive evidence to support the ruling other than the reports, which appeared to be weighed heavily by the trial court. As in the Fuge case, the trial court, although authorized to hear the testimony of *1269 Dr. Taylor “in chambers,” [1] in the presence of a court reporter and both parties’ attorneys, erred in prohibiting the attorneys from disclosing that testimony to Mrs. Blackmar and Mr. Richardson. Thus, because the judge’s actions were clear error, the only issue for us to decide is whether or not a substantial right of the party is affected.
This court, in In re Custody of Landry, 95-0141 (La.App. 1 Cir. 10/6/95), 662 So.2d 169, 172-173, cited Kaltenbach v. Breaux, 690 F.Supp. 1551, 1556 (W.D.La.1988), which stated:
|aThe rights to confront and cross-examine witnesses and to call witnesses in one’s own behalf have long been recognized as essential to due process. Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967); Jenkins v. McKeithen, 395 U.S. 411, 428-429, 89 S.Ct. 1843, 1852-1853, 23 L.Ed.2d 404 (1969); Morrissey v. Brewer, 408 U.S. 471, 488-489, 92 S.Ct. 2593, 2603-2604, 33 L.Ed.2d 484 (1972). These rights are among the minimum essentials of a fair trial:
A person’s right to reasonable notice of a charge against him, and an opportunity to be heard in his defense — a right to his day in court — are basic in our system of jurisprudence; and these rights include, at a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.
In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).
We find that this error affected a substantial right of the parties, particularly Mrs. Blackmar. Although the “in chambers” testimony of Dr. Taylor was recorded and the parties’ attorneys were present, the “gag order” issued by the judge resulted in prejudice to the parties and essentially impinged upon their right to fully explore the testimony of the witness on cross-examination.
Moreover, the judge’s order that none of Dr. Taylor’s testimony be disclosed or discussed with the parents or the children is in direct contravention to the attorney’s obligation under the Louisiana Rules of Professional Conduct to keep a client informed. See Art. XVI, Rule 1.4 of the Louisiana Rules of Professional Conduct. These rules (formerly the Code of Professional Responsibility) have the force and effect of substantive law. Succession of Wallace, 574 So.2d 348, 350 (La.1991); City of Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397 (La.1987); Gulf Wide Towing v. F.E. Wright (UK) Ltd., 554 So.2d 1347, 1354 (La.App. 1 Cir.1989).
11flBecause we find legal error in the trial court’s treatment of Dr. Taylor’s testimony, we pretermit discussion of assignments of error four, five and six.
Therefore, for the foregoing reasons, the trial court judgment is vacated and the case is remanded to the trial court for proceedings consistent herewith. We caution the trial court that in the event Dr. Taylor’s testimony is used at a subsequent hearing, all parties are entitled to be privy to the contents of his testimony. Pending further proceedings, custody, as it existed at the time of this rule, i.e., joint custody with visitation and Mrs. Blackmar designated as domiciliary parent, is reinstated. Costs are assessed to Mr. Richardson.
VACATED AND REMANDED.

. See La. C.C. art. 135.