802 So.2d 726 (2001)
George Gregory RICHARDSON
v.
Terri Lynn Peterson RICHARDSON (BLACKMAR).
No. 2001 CU 0777.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
Writ Denied November 16, 2001.
*727 Charlotte A. Pugh, Denham Springs, Counsel for Plaintiff/Appellee George Gregory Richardson.
Deborah P. Gibbs, Baton Rouge, Counsel for Defendant/Appellant Terri Lynn Peterson Richardson Blackmar.
Before: FOGG, GUIDRY, and SHORTESS, JJ.[1]
GUIDRY, Judge.
In this custody dispute, which has a long and protracted history, the family court rendered a judgment resulting in the split custody of two brothers. The defendant/mother (Ms. Blackmar) appeals the family court's judgment allowing her requested relocation from Baton Rouge to Illinois with one child, Aaron, but awarding a change in the "domiciliary parent status" over the older child, Pete, to the plaintiff/father (Mr. Richardson), who resides in Columbia, Louisiana. The family court's judgment regarding Ms. Blackmar's request for relocation has been before us previously, at which time we vacated the judgment based on the court's legal error in allowing the expert testimony of Dr. Alan Taylor to be heard in chambers, outside of the presence of the parties, and further, in issuing a gag order preventing the disclosure of that testimony to any of the parties. We remanded the matter to the family court for the taking of the testimony of Dr. Alan Taylor in the presence of the parties and for a re-determination of the best interests of the two children. On remand, the testimony of Dr. Taylor was taken, after which the family court, again, allowed Ms. Blackmar to relocate and found that it is in the best interest of the younger child, Aaron, to relocate with his mother and her new husband to Naperville, Illinois, but if Ms. Blackmar chose to relocate, it would be in the best interest of the older child, Pete, to live with his father in Columbia, Louisiana.[2]

BACKGROUND FACTS AND PROCEDURAL HISTORY
Mr. Richardson and Ms. Blackmar were married in February, 1987, in Tucker, Georgia. They established their matrimonial domicile in East Baton Rouge Parish and subsequently, two children were born of the marriage: Pete, born in September, 1987, and Aaron, born in November, 1994. The parties separated in April, 1996, and entered into a consent judgment wherein *728 they agreed to share the joint custody of the children, with Ms. Blackmar being designated as the domiciliary parent; support and visitation were also agreed upon by the parties. The parties were granted a divorce in October, 1996. Shortly thereafter, Mr. Richardson, who is self-employed and owns an engineering consulting firm, moved to Atlanta, Georgia. During this time, he enjoyed visitation with the children in Columbia, Louisiana, and neither party indicated any problems with the visitation arrangement.
Subsequently, and out of concern about the educational needs and falling grades of the older child, Peter, Ms. Blackmar voluntarily agreed to allow Peter to live with his paternal grandmother, who could provide tutorial aid, and attend school in Columbia, Louisiana, for the fourth-grade school term. Mr. Richardson moved his business to Columbia, to be near Peter and Mr. Richardson's mother. At the end of the school year, Peter returned to Baton Rouge to live with his mother and brother, and the parties resumed the visitation schedule.
In May, 1997, Ms. Blackmar remarried. Shortly thereafter, Mr. Richardson filed a petition to change custody, which was denied by the family court who maintained Ms. Blackmar as the domiciliary parent. In July, 1999, Mr. Richardson filed another petition to change custody during the school year. Again, the family court found that Mr. Richardson could not meet the required burden of proof for a change in custody.
On November 8, 1999, Ms. Blackmar notified Mr. Richardson, by certified mail in compliance with Louisiana's relocation statute, particularly La. R.S. 9:355.4, of her intent to relocate with the children from Baton Rouge, Louisiana to Naperville, Illinois, due to the demands of her new husband's job promotion and transfer. Mr. Richardson responded with a petition opposing the relocation. A hearing was held on May 1, 2000, following which the family court judge rendered the judgment allowing Ms. Blackmar to relocate with the younger child, Aaron, but providing that if Ms. Blackmar relocated, custody of the older child, Pete, would be awarded to Mr. Richardson in Columbia, Louisiana.
As noted earlier, that judgment was vacated by this court on an earlier appeal based on a finding of legal error concerning the testimony of Dr. Alan Taylor. See Richardson v. Blackmar, XXXX-XXXX (La. App. 1 Cir. 12/22/00), 774 So.2d 1264. The matter was remanded to the family court, at which time, the testimony of Dr. Taylor was heard in the presence of the parties. Again, the family court found that it was in the best interest of the younger child, Aaron, to relocate with this mother, but that it was in the best interest of the older child, Peter, not to relocate to Illinois with his mother and brother, but to live with his father in Columbia, Louisiana. It is this judgment which is the subject of this appeal.
On appeal, Ms. Blackmar raises certain issues pertaining to the family court's actions on remand from this court. Specifically, Ms. Blackmar asserts that the family court erroneously interpreted the purpose of the remand to be solely to take the testimony of Dr. Taylor in the presence of the parties. To this extent, Ms. Blackmar assigns error to the family court's denial of her motion to dismiss or continue the rule, and in limiting the testimony elicited on remand. Also, as in the previous appeal, Ms. Blackmar assigns error to the family court's failure to apply the Daubert test and exclude Dr. Taylor's testimony. Because we find the family court manifestly erred in determining the best interests of the children, even with the benefit of Dr. Taylor's testimony, we pretermit discussion *729 of these issues, and reverse the family court judgment.

RELOCATION
In 1997, the Louisiana legislature added new provisions to Title 9 of the Revised Statutes to govern custody matters involving the relocation of a parent. Acts 1997, No. 1173, § 1, consisting of La. R.S. 9:355.19:355.17.
Pursuant to La. R.S. 9:355.13, the relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. La. R.S. 9:355.13; Johnson v. Johnson, 99-1933, p. 4 (La.App. 3 Cir. 4/19/00), 759 So.2d 257, 259, writ denied, XXXX-XXXX (La.5/31/00), 762 So.2d 635. Louisiana Revised Statute 9:355.12 sets forth the factors a court shall consider when determining a relocation issue, as follows:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factor affecting the best interest of the child.
Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether a custody arrangement is in the best interest of the child. Deason v. Deason, 99-1811, p. 6 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 222. In consideration of the foregoing factors, the family court heard the testimony of Ms. Blackmar, her new husband, Guy Blackmar, Mr. Richardson, and Dr. Taylor, the counselor/therapist who counseled the older child, Peter, for several months prior to the proposed relocation. After reviewing the evidence, the family court determined that it was in the best interest of the younger child, who was still very attached to his mother, to relocate with her to Illinois. However, the court also determined that it was not in the best interest of the older child, Peter, to relocate away from "his family, friends, school, church and other significant things in his life."

Good Faith
Although the family court judge made no express finding that the proposed relocation was made in good faith, such a finding can be implied from the ruling allowing Ms. Blackmar to relocate with the younger child. Even if such a finding is not implicit in the judgment, the record amply supports a finding that the proposed relocation was made in good faith. The family court found that Ms. Blackmar's *730 request to move to Illinois with her children is "a move to be with her husband. Who (sic) has relocated because his employer transferred his employment to the State of Illinois as an Engineer." The court also found that Ms. Blackmar did not have a job in Illinois.
The record reveals that Mr. Blackmar's transfer to Illinois to the corporate headquarters of the company for whom he worked was not a voluntary transfer, but rather a promotion with a mandatory relocation to Illinois. The record also reveals, contrary to the family court's finding, that a move to Illinois would provide Ms. Blackmar an opportunity to remain with the same company for whom she has been employed for seven years in a position with a higher level of job security. Thus, the move was contemplated as a way to ensure the family's financial security and the record supports that the proposed relocation was based on good faith and legitimate reasons.

Best Interests of the Children
As mandated by the statute, La. R.S. 9:355.12, we must now review the evidence and consider the eight listed factors to determine if the trial court manifestly erred in assessing the best interests of the children.
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings and other significant persons in the child's life.
As found by the family court, the record reveals that both parents have been actively involved in the lives of their children and have enjoyed a quality relationship with them. Since the separation in 1996, they have shared joint custody with Mr. Richardson exercising visitation every other weekend, half of the holidays and eight weeks in the summer. The record reveals that initially following the separation, Mr. Richardson moved to Atlanta, Georgia for his business, and visited with the children in Columbia, where his mother lives. During the 1996-97 school year, Ms. Blackmar voluntarily agreed to allow Peter to live and attend school in Columbia out of concern for his falling grades and in anticipation that his educational needs might best be met with the tutorial aid of Mr. Richardson's mother. At that time, Mr. Richardson moved back to Columbia. The record reveals that Mr. Richardson lives in a rent home next door to that of his mother in Columbia, and that he and the boys spend the majority of their visitation time at his mother's house. With the exception of the 1996-97 school year that Peter spent living in Columbia, Ms. Blackmar has been the domiciliary parent and primary caregiver of both children for their entire lives, and they have continuously lived together as a family unit. The record reveals that at the time of the hearing, they were residing in the same family home they occupied for the past seven or eight years.
Mr. Richardson candidly admitted that during his marriage to Ms. Blackmar, he spent a lot of the time travelling and that it was not until after the divorce when Peter spent the school year with him in Columbia that "it became apparent to me how important the children should be in my life," and "the last four years ... I have work (sic) deligently (sic) to make myself available for my children." The record reflects that Mr. Richardson has moved back to Columbia and re-arranged his career goals and opportunities, as well as worked to make changes in the community in order to build a home in Columbia "where my children can be apart (sic) of the community and have a home." He testified that he has a good relationship with both children.
With regard to the other significant persons in the child's life, the record reveals *731 that in Columbia, in addition to being with his father, Peter would also enjoy the company of his grandmother and numerous cousins, friends, and other contacts he has made. Peter's paternal grandfather also lives in Columbia; however, the family is not in contact with him.
While the record establishes that Peter has family ties and good relationships in Columbia, the record also establishes a strong family unit in the Blackmars and all of the evidence indicates the likelihood that new family ties and friendships will emerge in Naperville. Ms. and Ms. Blackmar both testified that while Ms. Blackmar had no family nearby in Baton Rouge, her mother and sisters and the children's cousins live approximately five hours from where they intend to relocate in Naperville, Illinois. The record also reveals that Mr. Blackmar and Peter have established a good relationship since May, 1997; Mr. Blackmar described the relationship as one that has "gotten better with time." Ms. Blackmar testified that Peter's relationship with her new husband was very good now that he had overcome his fears about having a "new step-dad." Both testified that Peter and Mr. Blackmar play ball and do things together which strengthen the relationship. Mr. Blackmar described his relationship with the younger child, Aaron, as "very good" since the beginning.
The remainder of this factor, "the child's relationship with ... siblings" is particularly significant in this case since the lower court judgment has the effect of separating the two brothers. We will discuss this factor below under factor (8).
(2) The age, developmental stage, needs of the child and the likely impact that relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
At the time of the initial hearing, Peter was twelve and Aaron was six. The record reveals the boys are essentially normal, healthy, well-adjusted and likeable children who are outgoing and make friends easily. There is no evidence that the proposed relocation to Illinois will have any effect whatsoever in the physical development of the children. Educationally, although Peter has had some problems with reading which have caused some difficulties in school (i.e., he had falling grades in the fourth grade, and he failed and had to repeat the sixth grade), the record reveals that he responds well to tutorial help. Ms. Blackmar has always ensured Peter receives the help he needs (even to the point of allowing him to live with and receive such help from Mr. Richardson's mother in Columbia for one school term) and testified she would continue to provide it for him if needed in Naperville. To this end, Ms. Blackmar has provided the courts with a great deal of research she has done on the school system and educational opportunities available in Naperville. This evidence reveals that Naperville has a superior school district with excellent schools. In contrast, Ms. Blackmar also provided the court with evidence establishing the schools in Columbia, Louisiana to be "academically below average." Although Mr. Richardson indicated that he and his mother were considering sending Peter to a private school in Monroe, there was no evidence introduced to establish the details of this plan or the quality of that educational environment. The evidence did indicate that Peter's attendance at that school would require a thirty-mile commute each way every day.
Although Dr. Taylor testified that Peter preferred to live with his father in Columbia and had some apprehension and resistance to the inevitable changes accompanying a move to Illinois, he did not present any evidence that these changes would *732 have any long-lasting negative or damaging impact on Peter, emotionally or otherwise. Dr. Taylor also admitted that such apprehension to change in a child Peter's age is normal and can be expected. However, we note that, in this case, although the judgment of the family court denies Ms. Blackmar's request to relocate to Illinois with Peter based on its finding that a relocation is not in Peter's best interest, the judgment, nevertheless, results in a relocation of Peter anywayto Columbia, rather than Illinois. In light of the fact that a move to Columbia would still involve a new school, a new home, a new routine and a new family structure for Peter, some of the same concerns for which the family court did not find it in Peter's best interest to move to Illinois still exist with a move to Columbia.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties; and (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
Factors (3) and (5) are similar and overlap; thus, we will consider them together. At the outset, we note a pertinent fact which seems to have been overlooked by the trial court: this is not a situation where a parent is seeking to relocate from a place where the children and both parents lived in the same community. Since the separation between the Richardsons in 1996, the children have visited with Mr. Richardson every other weekend, half of the holidays and eight weeks every summer, at least three and a half hours away in Columbia. This is not a situation where the children and their father are accustomed to a shared community and daily life. Visitation has always necessitated travelling a significant distance (seven hours round trip by car). Although a move to Naperville, Illinois would create a greater distance and necessitate a change in the present visitation arrangement, there is nothing in the record to indicate that a modified visitation schedule would be unworkable. Flight arrangements can be substituted for car travel, and although visitation may not be as frequent, it can be structured to last longer periods of time wherein the quality of the relationship would not be negatively affected.
Contrary to allegations made in brief by Mr. Richardson, the record establishes that Ms. Blackmar has always fostered, encouraged and cooperated in visitation arrangements with Mr. Richardson. In fact, she demonstrated a willingness to allow Peter to live with Mr. Richardson when such an arrangement appeared to be in Peter's best interest educationally. Furthermore, during this time, the evidence reveals that Ms. Blackmar allowed increased visitation of the younger child so that the siblings could spend more time together. Finally, the record reflects that, in anticipation of the move and the necessary adjustments to the visitation schedule, Ms. Blackmar has already begun to coordinate the school schedules in Naperville with potential visitation times with Mr. Richardson in Columbia, which reflects to this court that she will continue to show a willingness to cooperate and encourage a continued relationship between the boys and their father.
Contrarily, the record reflects a continued resistance by Mr. Richardson to accept the court's award of joint custody and designation of Ms. Blackmar as domiciliary parent. In May, 1997, seven months after the consent judgment which awarded joint custody, designated Ms. Blackmar domiciliary parent and set out the *733 visitation schedule, Mr. Richardson filed a petition for permanent custody of the children, which was denied for lack of evidence of a change in circumstances. Mr. Richardson also filed a motion for increased visitation and a more detailed custody plan in March, 1998, and in July, 1999, he filed another rule to change custody; all relief was denied. Mr. Richardson's continued efforts to resist the joint custody and visitation plan, in the face of his repeated inability to show the requisite change in circumstances reveals he is unwilling to accept and make the most of the visitation schedule awarded him. We certainly do not agree with Mr. Richardson's opinion that the proposed relocation eliminates his "right to participate in the raising of [his] children." Given the willingness, acceptance, cooperation and efforts of both parties, long-distance visitation need not diminish in any way the quality of the relationships between a parent and child. A relocation may require some change and flexibility, but the opportunity to maintain a relationship with both sons remains intact for both parents.
(4) The child's preference, taking into consideration the age and maturity of the child.
As noted earlier, at the time of the initial hearing, Peter was twelve years old, and by all accounts, is a typical, normal, healthy, well adjusted child. Dr. Taylor testified regarding Peter's expressed desires regarding the proposed move to Illinois. (As noted earlier, because we find reversible error even with Dr. Taylor's testimony, we do not decide the issues presented regarding the propriety of allowing this testimony, particularly in light of the Daubert restrictions.) According to Dr. Taylor, Peter did not want to move away from his home, school and established friends in Baton Rouge. Given the fact that a move was necessary, Peter expressed a preference to live with his father and grandmother in Columbia, where he has family and friends and is accustomed to visiting, rather than live in Naperville, which would require a brand new school where friends and other ties are not already established. Ms. Blackmar did not introduce any evidence to refute this preference, although she testified that Peter seemed a lot more excited and interested in the move to Naperville before he spoke with his father about it, at which point he began to display a reluctance to the move.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
As noted earlier, the relocation is proposed as a result of Mr. Blackmar's being promoted to a higher level position with his company. This promotion will help ensure the family's financial welfare and stability. Further, also as stated earlier, the move to Naperville will give Ms. Blackmar the opportunity to remain employed with the same company for whom she has worked for seven years, in a position with higher job security.
In addition to having a superior educational system with schools rating "excellent" nationwide, the evidence introduced into the record also reveals that Naperville has been rated number one and two, respectively, in the past two years as the top place in the country to raise children. The record also reveals that the Blackmars have visited Naperville several times in search of schools and have already found a neighborhood (a new subdivision) designed for families with children, where they plan to live. The neighborhood has an aquatic center with pools and a water slide, a play area and two new schools, both within *734 walking distance from where they plan to live. Finally, as discussed earlier, the relocation will provide the children with superior educational opportunities. Thus, the record contains ample evidence establishing that the relocation is likely to enhance the general quality of life for Ms. Blackmar as well as her two children.
(7) The reasons of each parent for seeking or opposing the relocation.
As discussed earlier, the record provides a basis for finding that Ms. Blackmar's request to relocate was made in good faith and based on the legitimate mandatory transfer of her husband's employment. Mr. Richardson's opposition is also wellfounded and is based on his love for his children and his desire to be close to them, remain involved in their lives and maintain a quality relationship with them throughout their lives.
(8) Any other factor affecting the best interest of the child.
Peter's relationship with his younger sibling, Aaron, is particularly significant in this case because the judgment of the family court results in the separation of these two brothers. After considering the factors listed in La. R.S. 9:355.12, the family court concluded that it was in the best interest of Aaron to live with his mother, but it was not in Peter's best interest to move, so it awarded custody of Peter to Mr. Richardson. However, in separating the boys, the family court failed to give adequate consideration to the effects this separation would have on the boys and ignored a long-standing principle in Louisiana law relating to custody matters: The separation of children of a family, though sometimes necessary, is a custodial disposition that courts seek to avoid. Normally, the welfare of siblings is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape its orders to maintain family solidarity. Tiffee v. Tiffee, 254 La. 381, 387-388, 223 So.2d 840, 843 (1969); Howze v. Howze, 99-0852, p. 3 (La.5/26/99), 735 So.2d 619, 621; Earnest v. Earnest, 286 So.2d 747, 750 (La.App. 1 Cir.1973), writ denied, 290 So.2d 330 (1974). In each of the foregoing cases, the trial court's judgment awarding custody of siblings to separate parents was reversed based on manifest error in finding the best interests of the siblings were served by separating them.
While we are mindful that the decision of a trial court in family matters is entitled to great weight, we find the family court in this matter manifestly erred in its determination that the interests of the children could be served by splitting their custody.
The record reveals that Aaron and Peter share a close and affectionate bond as brothers. Peter was described as the "typical older brother" looking out for, supporting and guiding his younger brother. They get along very well, and in fact, although they have separate rooms, they choose to sleep in the same bedroom. The boys have always lived together as brothers and have shared visitation with their father together. We do not find any support for the suggestion that because of the difference in age between the two boys, the separation would not have a significant and negative impact on them. These two brothers have been together through their parent's divorce and ensuing litigation, and have forged close bonds through their family experience. The record before us is clear, and even Dr. Taylor did not refute, that a separation in the living arrangements of the boys would have a negative impact on their well-being. At the very least, it will deny them the closeness and affection shared by siblings which cannot be replaced by friends or other relationships.
Given the strong weight in favor of keeping the brothers together, together *735 with careful consideration of the eight factors listed in the statute, we find the evidence strongly reflects that it is in the best interest of both children that they relocate with their mother and remain together in the close family unit to which they have been accustomed. It appears that the family court relied heavily on the testimony of Dr. Taylor that Peter desires to live with his father in Columbia rather than to move to Illinois. However, this is only one of eight factors to consider and a child's preference is never the sole determining factor in a custody decision.
When there are two loving, concerned and involved parents, as there are in this matter, decisions regarding the custody of the children are extremely difficult, and even more so when the relocation of one of the parents is at issue. However, in today's society, this is one of the many inevitable and undesirable effects of divorce when children are involved. We have undertaken a very careful and thorough review of the record in this case and conclude that the evidence taken as a whole strongly preponderates in favor of allowing Ms. Blackmar to relocate to Naperville, Illinois with both of her children. The family court committed manifest error in finding otherwise; accordingly, the family court judgment is hereby reversed. Judgment is hereby rendered that it is in the best interest of both children, Peter and Aaron, to relocate with their mother to Naperville, Illinois. It is hereby ordered that Mr. Richardson relinquish custody of Peter and that he relocate with his mother and brother in Naperville, Illinois. Costs of this appeal are assessed equally to both parties.
REVERSED AND RENDERED.
NOTES
[1] Judge Melvin A. Shortess, retired, is serving as Judge Pro Tempore by special appointment of the Louisiana Supreme Court.
[2] Notably, the family court judgment also provides that if Ms. Blackmar should choose not to relocate, then both children would remain with her as the domiciliary parent, subject to the existing agreed on visitation schedule.