870 So.2d 1088 (2004)
Debra Still, Wife of Wilton BOURQUE, Jr.
v.
Wilton BOURQUE, Jr.
No. 03-CA-1254.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*1090 Anthony T. Marshall, Anthony T. Marshall and Associates, Gonzales, LA, for Appellant.
W. Donald Cashio, New Orleans, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
Defendant, Wilton Bourque (Bourque) appeals from the trial court judgment granting sole custody of the minor child, Lance Bourque (Lance), to his mother, Plaintiff, Debra Still[1] (Still). For the reasons which follow, we reverse in part and affirm in part.
The parties were married on July 9, 1977. Two children were born of the marriage, Chadwick Bourque, who is now a major and not part of this case and Lance Bourque, who is now approximately eleven years old. The parties separated on July 7, 1997 and a judgment of divorce was rendered on May 28, 1998. A consent judgment was entered regarding custody of the children and the parties were granted joint custody with Bourque designated as the domiciliary parent of the older child and Still designated as the domiciliary parent of the younger child. This judgment was amended a year later, designating Still as domiciliary parent of both children. On September 12, 2002, Still filed, among other things, a Motion to Change Custody, requesting sole custody of Lance. Bourque responded with his own motion for sole custody of Lance. The matter was heard on April 1, 2003 and taken under advisement. On June 6, 2003, the trial court rendered judgment with reasons granting Still's motion to change custody and awarding her sole custody of Lance, with alternating weekend visitation for Bourque during the school year and the same holiday visitation. Bourque was also prohibited from telephoning his son in the mornings before school. Still was ordered to allow Bourque telephone access to the child in the evenings between 6:00 and 8:00 p.m.[2] It is from this judgment that Bourque appeals. Still answered the appeal requesting damages for Bourque's filing of a frivolous appeal.
On appeal Bourque assigns three errors. He first argues that the trial court erred in refusing to grant his request for an independent psychological evaluation. Bourque argues that the custody decision should not be based on the biased report by Mr. John Muggivan (Muggivan), a social worker who prepared a report and testified on behalf of Still. Bourque argued that an independent counselor should have been appointed to evaluate the case.
The trial court accepted Muggivan, "as an expert in the field of being a licensed *1091 clinical social worker." However, the trial court knew that Muggivan had met with Lance and his mother approximately 15 times and had only met with Bourque five times, going to the weight of the evidence, but not making it inadmissible. Moreover, the trial judge opined that ordering an independent evaluation was nothing more than an abdication of his responsibilities, which often proves expensive to the parties. He held that he could make an independent evaluation based on the evidence presented and did not find it necessary to have someone else do it.
La. R.S. 9:331 on custody evaluations provides:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.
Clearly the language of the statute is permissive and not mandatory. The decision of whether a psychological evaluation should be ordered in a custody proceeding lies within the trial court's discretion. Scott v. Scott, 95-0816 (La.App. 1st Cir.12/15/95), 665 So.2d 760, writ denied, 96-0181 (La.2/2/96), 666 So.2d 1106.
In this case we find no abuse of the trial court's discretion in refusing to order psychological evaluations of all the parties and the child. There was no showing made that any kind of psychological issues existed among the parties, their spouses or the child that needed expert psychological evaluation. We commend the trial judge for retaining his responsibility to evaluate the case himself, based on the evidence presented to him rather than turning it over to an independent evaluator.
Bourque's real issue here is with the bias of Muggivan, who was working for Still. However, the trial court correctly noted that would go to the weight given the testimony. We find no error in this case in the trial court's denial of Bourque's request for appointment of an independent psychological evaluator.
Next, Bourque argues that the trial court erred in refusing to allow his 11 year old son to testify. Bourque stated that if Lance would have testified he would have said that he wanted to live with his father. Further, Bourque argued that the child was old enough to provide valuable information to the trial court in considering this matter.
Muggivan testified that he would recommend against Lance testifying, even in the judge's chambers. Whatever Muggivan's biases may or may not be toward Bourque, there is no basis from which to conclude that his primary concern is not Lance's best interest. He has worked with Lance for some time and knows him well. Muggivan testified that the child was very anxious and stressed. Further, it would be very stressful and detrimental for the child to have to testify for or against either parent. He noted that Lance is trying to please both parents and requiring him to testify, even in chambers, would put undue pressure on him. Further, it was not disputed that if the child testified, he would say that he would prefer to live with his father. Whether or not *1092 to allow a child to testify in a custody proceeding is a matter of trial court discretion and we find no error in the trial court ruling considering the facts and circumstances of this case.
Finally, Bourque argues that the trial court erred in changing the joint custody arrangement that had been in existence for the past six years and granting Still sole custody of the child with him having alternating weekend visitation.
Still filed the initial request for change of custody, alleging that Bourque exhibited egregious behavior toward her and that Bourque makes disparaging comments to the child and in front of the child about her and encourages manipulative behavior on the part of the child that adversely affects his normal mental and social adjustment. Still alleged that Bourque encouraged the child to call 911 when it was unwarranted. Finally, she alleged that Bourque refused to give the child his prescribed medication.
Bourque filed a request for change of custody in response. He denied the allegations in Still's petition and alleged that Still had allowed her husband, Richard Hamilton (Hamilton) to physically abuse Lance. Specifically, he alleged that Hamilton pulled Lance's hair, causing him extreme pain so that Lance reported it to the school nurse the following day. He also alleged that Hamilton struck Lance with an automobile, causing the child to call 911 for assistance. Bourque alleged that Hamilton also pulled down Lance's pants, exposing him to his mother and causing him embarrassment. Bourque alleged that Still and Hamilton have violent discussions and arguments in front of the child causing him mental anguish. He also alleged that Hamilton called the child a "dildo." Bourque states that Still has put a "call block" on her home phone that prevents Bourque from telephoning his son. Finally, Bourque alleged that the child has expressed a preference to live with him.
At the hearing, in addition to some general character witnesses, the only witnesses to testify were the parties, their spouses and Muggivan. While reference was made by some of the witnesses to a report by Dr. Fontenelle and Dr. Lessor, neither is in the record.
Still and Hamilton admitted the hair pulling, driving the automobile into the child and pulling down his pants but attempted to explain the events. They testified that upon realizing the effect of the event on the child they would not do it again. Hamilton denied calling the child a "dildo" and they denied arguing in front of the child or using improper language. Still admitted that she blocked Bourque's work number because of his numerous calls in the morning, which she considers disruptive to the child's morning preparatory routine. She testified that Bourque would call 20 times in the morning and it was upsetting to Lance to hear the phone ringing, knowing it was his father. Still would not answer the phone, however. So when the answer machine picked up, Bourque would hang up and call back. She stated that she told Lance that if he got ready early, he could call his father. Still also testified that Bourque checks Lance out of school early as a matter of convenience, to make a 45 minute drive home. She stated that he checked the child out early 15 times, but did not have the school documentation to support this claim. She also testified that Bourque would not give Lance his prescribed medicine for his Attention Deficit Hyperactivity Disorder (ADHD).
Bourque testified that the hair, automobile and pants incidents were very upsetting to Lance. He testified that Lance had telephoned him about the automobile *1093 incident and had asked Bourque to call 911. Bourque stated that he told Lance he could not do that but if Lance felt afraid he should place the call himself. Lance called 911 following that incident. Bourque denied, as he was accused by Still, of encouraging Lance to call 911. He simply stated that he told Lance that if he felt afraid he should call 911. Bourque also testified that he did not think that his son had ADHD and did not think that he needed the medication. However, he testified that he spoke with Dr. Lessor, the prescribing physician, about the need for the medication and they had agreed that at different times Lance could not take the medicine. Bourque stated that if Dr. Lessor instructed him to give Lance the medicine, he did. Bourque also explained the sign outs as two medical appointments for himself after hurting his back and maybe one or two for Lance. The remainder were not sign outs during school time but following the end of school. He explained that you had to sign the child out if you did not want to wait the 20 minutes for bus loading and dismissal. As stated above, there was no school documentation to support or contradict either parties' testimony. Bourque also testified that his number had been blocked at Still's home so that he could not call his son. He stated that he often is not allowed to speak to his son when he calls at night. He is told that Lance is bathing or out. Bourque goes to work early in the morning so he calls Lance in the morning, after arriving at work, because he thought he could reach him then. Still would not allow him to talk to Lance or simply would not answer his calls. Finally, he found that his number had been blocked. Bourque denied talking negatively about Still either in front of or to Lance. Bourque also testified that he had requested on several occasions, both alone or with Muggivan, to meet with Hamilton so that they could discuss issues relating to Lance and Hamilton refused. Finally, Bourque testified that he and his current wife have a very positive relationship with Lance. He hunts and fishes with Lance and they attend church weekly, which he does not attend with his mother.
Muggivan, the clinical social worker, testified that he was consulted by Still to treat Lance for behavior problems. He saw Lance and Still about 15 times and Bourque about five times. He testified that Lance was a very anxious child who seemed to be under a lot of stress. Muggivan testified that, opposed to Still's view, he did not think that Lance had ADHD. Rather, he believed that his behavior problems stemmed from his stress and that if the stress could be alleviated then he would not need the medication. Muggivan attributed some of the stress that Lance was under to the conflict between his mother and father, more particularly he stated, to Bourque's unwillingness to accept the situation of being a separated parent. Muggivan felt that Bourque undermined Still's authority with Lance as well as the authority of all adults in Lance's life. Muggivan referred to a comment by Bourque in Lance's presence that he thought the judge had made the wrong decision in the custody case. On cross examination, however, Muggivan admitted that part of Lance's problems may be receiving passing grades but being retained in his same grade. Bourque disagreed with this decision. Muggivan admitted that he agreed with Bourque that this was detrimental to the child and could be causing or contributing to his stress. Muggivan also admitted that he did not work with Bourque the way he worked with Still and her husband. He said he did not think that it was necessary since he was focused on improving Lance's behavior in school. Muggivan also admitted that he *1094 was basing his opinions largely on information he had obtained from Still and accepted as true. For example, he attributed Lance's improvement in school solely to Still but admitted that he based that on things he had been told about Bourque by Still. He did state that in an earlier session Bourque had expressed a negative attitude about everything, Still's parenting, her choice in a mate, the school, the doctor, etc.
Although the trial court denied Bourque's request to have Lance testify, it was not disputed that had he testified he would have stated that he preferred to live with his father.
In every custody case, the primary concern is the best interest of the child. La. C.C. art. 131. Each case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision which is in the best interest of the child. Anderson v. Anderson, 01-53 (La.App. 5th Cir.5/30/01), 788 So.2d 676; Remson v. Remson, 95-1951 (La.App. 1st Cir.4/4/96), 672 So.2d 409; Zanco v. Zanco, 97-342 (La.App. 5th Cir.11/12/97), 703 So.2d 745. While the best interest of the child remains the paramount concern in making custody determinations, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible. Shambley v. Holmes, 02-116 (La.App. 5th Cir.5/15/02), 821 So.2d 21; DeGeorge v. Gilley, 97-387 (La.App. 5th Cir.10/28/97), 701 So.2d 1079.
When the custody order is by consent of the parties, and not a considered judgment made by the trial judge, the party seeking the change must show a material change in circumstances since the entry of the original decree and that the modification proposed is in the best interest of the child. Anderson, supra; Haik v. Haik, 94-563 (La.App. 5th Cir.12/14/94), 648 So.2d 1015.
La. C.C. art. 134 outlines the factors in determining the best interest of a child:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
*1095 Further, in determining what is the best interest of the child in a change of custody case, courts must examine all relevant factors including stability of environment, standard of living each parent can provide and the prior history of the child's custody. Schuchmann v. Schuchmann, 00-094 (La.App. 3rd Cir.6/1/00), 768 So.2d 614; Roberie v. Roberie, 33,168 (La.App. 2nd Cir.12/8/99), 749 So.2d 849. Continuity and stability of environment are important to consider in child custody matters. Schuchmann, supra; Roberie, supra. A change from a stable environment should not be made absent a compelling reason. Day v. Day, 97-1994 (La.App. 1st Cir.4/8/98), 711 So.2d 793.
Viewing this case in light of the above principles, we find that the trial court erred in changing the former custody arrangement that had existed for the past six years. First and foremost, this record is barren of any showing of a material change in circumstances since entry of the original decree. The parents share custody of the child and have done so for the past six or more years. They apparently don't do it well, since there appears to be a good bit of animosity existing between them, even after several years. Of course, the continued antagonistic behavior of both parents toward each other is not in the best interest of the child, but it also does not appear to be anything new to this situation. Moreover, Still alleged no change in circumstances and the trial court made no finding of a material change in the circumstances of the parties. Without a showing of a change in circumstances, which warrants a hearing on the request to change the custody arrangement, the ruling changing custody was not proper.
Furthermore, we feel compelled to add that, after considering the factors listed in La. C.C. art. 134, the record before us does not support the finding that changing custody and giving sole custody to the mother with limited visitation to the father is in the best interest of this child. It is apparent from the record that this case has been before the court previously and that it is possible that the trial judge knows more about this case than appears in this record. For example, reference was made during the hearing to an earlier report by Dr. Fontenelle, which is not in the record. However, as an appellate court we can do nothing other than base our decision on the record before us. We find, that the record in this case does not support a finding that a change of custody is in the best interest of Lance.
As stated above, the record makes it clear that both parties harbor animosity toward each other. For example, much was made of Bourque's numerous morning calls, but the record also shows that he makes numerous calls because Still will not answer the calls. Still stated that a morning call is disruptive to Lance's morning routine. She also stated that she told her son that if he got ready early he could call his father. We find that the repeated calls evidence as much animosity as refusing to answer them and using communication with a parent as a disciplinary tool or reward.
Most of the allegations in this case, on both sides, amount to nothing more than "he said/she said" with no outside testimony or documentation to prove or disprove the allegations. For example, Still said that Bourque makes derogatory comments about her in front of Lance. Bourque denied that and presented witnesses who said they never heard him say anything bad about Still in front of Lance. Bourque alleged that Still and Hamilton have violent quarrels and use bad language in front of Lance. Still denied that.
Bourque testified about some inappropriate conduct by Hamilton towards *1096 Lance. No one disputes the occurrences or the impropriety. Still testified that Hamilton was told not to repeat the behavior and he has not.
There were allegations by Still that Bourque inappropriately checks Lance out of school early for his convenience. Bourque testified that the checkouts were for medical appointments or after the academic periods had ended. While we agree that checking the child out of school as a matter of convenience to get home early and not for a legitimate reason would be inappropriate and send the wrong message to the child, there was no documentation in the record to support the claim or contradict Bourque's explanation.
Muggivan concluded that Lance's school improvement is attributable to Still. However, the underlying fact is that the child's grades and behavior in school have improved under the present custody arrangement. There is no support in the record for the conclusion that time spent by Lance with his father during the school week is not in his best interest.
What is glaringly clear from this record is that neither of these parents are perfect. They both have good points and bad points and both seem to have a positive place in Lance's life.
Still is a very devoted mother who has her child's best interest at heart and is trying to do what is right for Lance. She is working hard with Lance and has attended sessions with Muggivan. However, we also find that Bourque plays an important role in Lance's life as his father, fishing, hunting and attending church services together. Bourque was against holding Lance back, which Muggivan admits might be adding to his stress. Bourque also questions whether Lance has ADHD, a concern Muggivan likewise expressed.
Based on the foregoing and considering the factors listed in La. C.C. art. 134, we find that the record before us does not establish that it is in Lance's best interest to change custody and award sole custody to Still. While we are mindful of the discretion afforded the trial court in custody cases, we nevertheless conclude that the judgment changing custody in this case from joint custody to sole custody in favor of Still was manifestly erroneous. That part of the judgment is set aside and custody reverts to that provided in the previous consent judgment. In addition, we recognize that visitation schedules are not static and sometimes must be altered in accord with the changing circumstances in a child's life when it is in the child's best interest. Therefore, at the request of either party the trial court should conduct an evidentiary hearing to review the visitation schedule and determine whether there has been a change in circumstances that would warrant a change in the visitation schedule if it is in the best interest of the child. The other issues resolved in the trial court judgment were not contested on appeal and as such are final and affirmed.
Accordingly the judgment of the trial court is reversed insofar as it changed the previous joint custody judgment and awarded sole custody to Still. In all other respects the trial court judgment is affirmed. Still's motion for damages for a frivolous appeal is denied. Costs of appeal are to be borne by each party.
REVERSED IN PART; AFFIRMED IN PART; AND MOTION DENIED.
NOTES
[1] Still, Plaintiff's maiden name, is the name used in the caption of the case. She divorced Bourque, remarried and now uses the name Hamilton. For consistency, we will use her name from the caption.
[2] The judgment also resolved child support and contempt issues and assessed attorney fees of $400 and costs against Bourque, none of which are part of this appeal.