958 So.2d 13 (2007)
Emily Allain SILBERNAGEL
v.
Eric SILBERNAGEL.
No. 06-CA-879.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
*15 J. Louis Watkins, III, Attorney at Law, Houma, Louisiana, for Appellant/Appellee, Emily Silbernagel.
Don C. Gardner, Attorney at Law, Harahan, Louisiana, for Appellee/Second Appellant, Eric Silbernagel.
Panel composed of Judges SUSAN M. CHEHARDY, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
SUSAN M. CHEHARDY, Judge.
In this appeal, Emily Allain Silbernagel and Eric Silbernagel both seek review of judgment rendered in their dispute over custody of their only child, Matthew. After trial, the trial court denied Eric Silberganel's request to designate him as the domiciliary parent. The trial judge also modified the visitation agreement to give each parent physical custody for 7 consecutive days with all other aspects of the original consent decree to remain operative and ordered that Matthew attend St. Louis King of France Catholic School through the end of the 2007 school year. For the reasons that follow, we affirm the judgment of the trial court.
Facts and Procedural History
The parties in this matter, Eric Silbernagel and Emily Allain Silbernagel, were married on November 15, 1996, and had one child, Matthew, during their marriage. The parties were divorced on January 7, 2004. On July 6, 2004, the parties entered into a consent judgment, which was signed on August 30, 2004. The judgment awarded the parties joint custody of Matthew, with Emily Silbernagel designated as domiciliary parent, subject to specific, regular custodial periods to be exercised by each of the parties, with slight modifications of the custodial periods for holidays, birthdays, and summer vacations and subject to Matthew's attendance at St. Louis King of France Catholic School for the school year ending in 2005. On August 17, 2005, the parties signed a consent judgment partitioning their community property, which left Emily Silbernagel as sole owner of the former family home in Metairie.
*16 On August 29, 2005, Hurricane Katrina devastated the Gulf Coast, including Jefferson Parish. Eric Silbernagel took Matthew and evacuated to Baton Rouge, Louisiana, where Eric and his extended family remained for a number of weeks. Emily Silbernagel, due to her employment at Tulane Hospital, was trapped in New Orleans, Louisiana until Friday, September 2, 2005. Thereafter, Emily evacuated to Houma, Louisiana with friends. On Sunday, September 4, 2005, Emily was reunited with Matthew and they returned to Houma. On September 8, 2005, Emily enrolled Matthew in elementary school in Houma, Louisiana. Both parties agree that St. Louis King of France Catholic School had not re-opened at that time. On or about October 10, 2005, St. Louis King of France School re-opened. At the time of trial, Eric had remarried and returned to live in Metairie, Louisiana and Emily remained in Houma, Louisiana.
On October 13, 2005, Eric Silbernagel filed an Emergency Rule for Temporary Change of Physical Custody, seeking designation as domiciliary parent with visitation for Emily Silbernagel every other weekend until she returned to live in Metairie, and re-enrollment of Matthew at St. Louis King of France School. Eric Silbernagel alleged that the change was in Matthew's best interest because Matthew would be irreparably harmed by his upset regarding "the living conditions in Houma, and the loss of his school and friends." On or about November 9, 2005, the trial judge ordered that Matthew return to St. Louis King of France until both parties agreed to a change of school or the court ordered a change.
On March 6, 2006, Emily Silbernagel filed a Motion and Order for Psychiatric Evaluation of the parties. On March 8, 2006, the State of Louisiana Department of Social Services through the Jefferson Parish District Attorney filed an Ex-Parte Motion and Order to Change the child support payee and transfer the child support award enforcement and modification to the Jefferson Parish Juvenile Court.
Hearings on Eric Silbernagel's Emergency Rule were completed on April 3, 2006. The trial judge rendered judgment on April 6, 2006, denying Eric Silbernagel's request to be designated domiciliary parent; ordering Matthew's attendance at St. Louis King of France School until the end of the 2007 school year; and changing the visitation schedule to provide each parent with seven consecutive days of physical custody with all other provisions of the original decree to remain operative.
On May 3, 2006, Emily Silbernagel filed a Motion for Appeal, which was granted on May 5, 2006. On May 10, 2006, Eric Silbernagel filed a Motion for Appeal, which was granted on May 11, 2006. On May 11, 2006, Eric Silbernagel also filed a Rule for Contempt and Ex-Parte Motion and Order to Return Child Support Award and Enforcement to the district court from juvenile court. After the contempt hearing, the trial judge found Emily in contempt, sentenced her to six months in jail; and ordered her to pay $3,000.00 of Eric Silbernagel's attorney fees as a sanction for allegedly failing to pay her portion of Matthew's tuition.
On appeal, Eric Silbernagel argues that the trial court erred in failing to designate him as Matthew's domiciliary parent. On appeal, Emily Silbernagel raises multiple assignments of error: the trial court erred in ordering Matthew's attendance at St. Louis King of France school for the school years 2005-2006 and 2006-2007; the trial court erred in ordering a change in the physical custody schedule; the trial court erred in refusing to allow introduction of evidence at trial, including emails between the parties, evidence prior to the August *17 30, 2004 consent judgment, and evidence prior to Hurricane Katrina; the trial court erred in denying Emily Silbernagel's Motion for Psychiatric Evaluation of the parties; the trial court erred in holding Emily Silbernagel in contempt of court; the trial court erred in sentencing Emily Silbernagel to six months in jail for contempt; and the trial court erred in ordering Emily Silbernagel to pay $3,000.00 of Eric Silbernagel's attorney fees as a sanction for allegedly failing to pay her portion of Matthew's tuition.
Discussion
It is a well recognized tenet of Louisiana jurisprudence that an award of child custody is not a tool to regulate human behavior. Cleeton v. Cleeton, 383 So.2d 1231, 1236 (La.1979)(on rehearing). Every child custody case must be viewed within its own peculiar set of facts. Connelly v. Connelly, 94-0527, p. 4 (La.App. 1 Cir. 10/7/94), 644 So.2d 789, 793. The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 738; La. C.C. art. 131.
The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. Thompson v. Thompson, 532 So.2d 101, 101 (La.1988)(per curiam.)
In this case, and as in most child custody cases, the trial court's determination was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Stobart v. State, DOTD, 617 So.2d 880, 882 (La.1993).
We will first address Eric Silbernagel's assignment of error that the trial court erred in refusing to designate him as Matthew's domiciliary parent. There is a distinction between the burden of proof needed to change a custody plan ordered pursuant to a considered decree and of that needed to change a custody plan ordered pursuant to a non-considered decree (or stipulated judgment). Evans, 708 So.2d at 738. A "considered decree" is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. Major v. Major, 02-2131 (La.App. 1 Cir. 2/14/03), 849 So.2d 547, 551. Once a considered decree of permanent custody has been rendered by a court, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986).
By contrast, a non-considered decree or uncontested decree is one in which no evidence is presented as to the *18 fitness of the parents, such as one that is entered by default, by stipulation or consent of the parties, or is otherwise not contested. Major, 849 So.2d at 552. In cases where the underlying custody decree is a stipulated judgment, and the parties have consented to a custodial arrangement with no evidence as to parental fitness, the heavy burden of proof rule enunciated in Bergeron is inapplicable. Id. Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child. Id.
In the instant case, the underlying custody decree is a stipulated judgment whereby the parties consented to a joint custody arrangement with Emily Silbernagel as the primary domiciliary parent. Thus, the heavy burden of proof rule enunciated in Bergeron is inapplicable. In order to modify the present custody arrangement, it was Eric Silbernagel's burden of proof to establish that a change in circumstances materially affecting the welfare of the child had occurred since the rendition of the stipulated judgment on August 30, 2004, and further that the modification proposed by him is in the best interest of the child.
In the present case, Emily Silbernagel moved to Houma, Louisiana, which is an intrastate move within the 150-mile radius established by La. R.S. 9:355.1(4)(b). Major v. Major, 02-2131 (La.App. 1 Cir. 2/14/03), 849 So.2d 547, 551. An intrastate move is not per se a material change of circumstances such that a court may presume that it will materially affect the children's welfare without further evidence. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48, 52; writ denied, 95-1488 (La.9/22/95), 660 So.2d 478.
At the hearings on Eric Silbernagel's Emergency Rule for Temporary Change of Physical Custody, the trial judge heard testimony from Emily Silbernagel; Eric Silbernagel; the maternal grandfather, Nolan Allain; a social worker, Elliott Levine; and Emily Silbernagel's friend, Laura Ryan.
Emily Silbernagel testified that she had decided to try to sell the family home before the storm because the note was significantly more than she could afford on her salary. Regarding her choice to relocate to Houma, Louisiana in September of 2005, she testified that, after the storm, her home in Jefferson Parish did not have utilities for an extended period of time. She also had available support from close friends in Houma, Louisiana. Further, the school system had returned in Houma and she did not know when Matthew's school would re-open. She stated that she chose to stay in Houma because the standard of living was better on her salary and she liked the neighborhood and people better.
Nolan Allain testified that his daughter had spoken with him before the storm about her inability to pay the note on the former family home. He also testified that, as far as he knew, Emily Silbernagel was the primary caretaker for Matthew for most of his life. He also testified that Matthew was very attached to his mother and removal from her care would be detrimental to him.
Laura Ryan testified that Emily Silbernagel and her son, Matthew, stayed with her family for about eight weeks after the storm. She testified that Emily is a friend of her son, Robert. Laura testified that Emily and Matthew lived in two bedrooms inside of her house while her son and his kids lived in a garage-type apartment, which was detached from the house. Laura did not witness any inappropriate contact *19 or behavior by Emily or Robert while any of the children were at the house.
Elliott Levine, a licensed social worker, was called by Eric Silbernagel to refute the court-appointed custody evaluators' report. Levine testified that he had spoken with Matthew on two occasions. He also admitted that he had spoken with Eric Silbernagel on several occasions regarding the custody dispute. He also admitted that he had never spoken with Emily Silbernagel. He testified that he felt that based on testimony that he heard that both parents were very loving with Matthew and exhibited good parenting skills. He specifically disagreed, however, with the custody evaluator's report, which recommended that Emily Silbernagel remain the domiciliary parent even though she had moved to Houma. He stated that, in his opinion, the disruption caused by moving away from the former family home was very significant. Further, he testified that he would disagree with designating the parent that moved 50 miles away from the original home as the domiciliary parent.
In determining the best interest of the child, the trial court considered the twelve non-exclusive factors set forth under La. C.C. art. 134. After reviewing those factors and taking into account the oral testimony presented at the hearing in this matter, the trial judge found that the factors favored maintaining Emily Silbernagel as domiciliary parent.
In sum, the trial court found that Eric Silbernagel failed to meet his required burden of showing that a change of circumstances materially affecting the welfare of his minor child had taken place since the last stipulated judgment, and that the modification proposed by him was in the best interest of the child. We find no error in the trial judge's ruling.
We turn now to Emily Silbernagel's assignments of error. In her first and second assignment of error, Emily Silbernagel argues that Eric Silbernagel failed to present any evidence that proved that Matthew was required to attend St. Louis King of France School in order to meet special needs. We find that Emily Silbernagel's argument relies on an erroneous interpretation of law.
Here, the parties agreed that Matthew Silbernagel would attend St. Louis King of France School in the original consent judgment. In essence, Emily Silbernagel is essentially moving for a modification of the custody agreement to allow Matthew to attend another school. As discussed above, in order to modify the present custody arrangement, the mover, which, in this instance, would be Emily Silbernagel, bears the burden of proof to establish that a change in circumstances materially affecting the welfare of the child had occurred since the rendition of the stipulated judgment on August 30, 2004, and further that the modification proposed by her is in the Matthew's best interest.
While Emily Silbernagel presented evidence that she had moved to Houma for financial and personal reasons, we cannot say that it was a change in circumstances that materially affected Matthew's welfare such that a change in his school was warranted. Further, a child's successful continuation of his or her education in a proven academic environment is generally found to be in his or her best interest. Campbell v. Campbell, 95-1711, p. 11 (La.App. 1 Cir. 10/10/96), 682 So.2d 312, 320. We thus find no error in the trial court's ruling ordering Matthew's continued attendance at St. Louis King of France School.
In her third assignment of error, Emily Silbernagel argues that the trial judge erred in modifying the physical custody schedule. Here, the parties agreed *20 to a specific rotation of physical custody of Matthew Silbernagel, which amounted to seven non-consecutive days in every fourteen days. After trial of Eric Silbernagel's Emergency Rule, the trial judge, in consideration of the factors in La. C.C. art. 131, modified the custody agreement to give physical custody of Matthew to each party for seven consecutive days, alternating every Friday after school. After reviewing the record, we cannot say that this ruling was in error.
In her fourth, fifth and sixth assignments of error, Emily Silbernagel argued that the trial court erred in refusing to allow introduction of evidence at trial, including emails between the parties, evidence prior to the August 30, 2004 consent judgment, and evidence prior to Hurricane Katrina. Emily Silbernagel did not, however, brief these assignments on appeal. According to Rule 2-12.4 of the Uniform Rules, Courts of Appeal, all specifications or assignments of error must be briefed and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. Accordingly, we find that these assignments of error have been abandoned by appellant, and will not consider the merits of these allegations. Henry v. Henry, 825 So.2d 548, 552 (La.App. 5 Cir. 6/26/02).
In her seventh assignment of error, Emily Silbernagel argues that the trial court erred in denying her request to require a psychiatric evaluation of the parties. La. R.S. 9:331 provides:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.
Clearly the language of the statute is permissive and not mandatory. The decision of whether a psychological evaluation should be ordered in a custody proceeding lies within the trial court's discretion. Bourque v. Bourque, 03-1254 (La.App. 5 Cir. 3/30/04), 870 So.2d 1088.
In this case, we find no abuse of the trial court's discretion in refusing to order psychological evaluations of the parents and child. The parties had previously been evaluated and there was no showing made that psychological issues had developed since the previous evaluation. We find no error in this case in the trial court's denial of Emily Silbernagel's request for appointment of a second psychological evaluator.
In her eighth, ninth, and tenth assignments of error, Emily Silbernagel challenges the trial court's finding of contempt, sentence of six months imprisonment, and order to pay $3,000.00 in attorney fees. We decline to address these assignments of error because the ruling at issue is not properly before us on appeal.
Here, the ruling before us, which both parties properly appealed, is the April 7, 2006 judgment that dealt solely with custody issues. On May 11, 2006, Eric Silbernagel filed a Rule for Contempt, which the trial judge heard and decided on June 13, 2006. In her final assignments of error, Emily Silbernagel attempts to appeal the trial judge's finding of contempt. The record *21 does not reflect that Emily Silbernagel filed a Motion for Appeal challenging that ruling and, as such, the ruling is not properly before this Court.[1]
In conclusion, we find that the trial court did not err in maintaining Emily Silbernagel as the domiciliary parent, ordering Matthew's continued attendance at St. Louis King of France school, or denying Emily Silbernagel's motion for psychiatric evaluation. We also find no error in the trial judge's modification of the physical custody arrangement to alternating seven-day periods, beginning every Friday, subject to modifications set forth in the original consent judgment for holidays, birthdays, and summer vacations. Accordingly, we affirm each of those rulings. We decline to address the trial court's finding of contempt with respect to Emily Silbernagel as it is not properly before this Court. Each party is taxed to pay their own costs of this appeal.
AFFIRMED.
NOTES
[1] Emily Silbernagel's Motion for Appeal, which was filed May 3, 2006, did not seek review of the contempt ruling.