FREDERICKA HOMBERG WICKER, Judge.
 

 I .This is a custody dispute between Emily Allain Silbernagel and Eric Silbernagel regarding the custody of their eleven-year old minor son, Matthew. After a trial on the merits, the district court modified the preexisting custody agreement by naming both parents co-domiciliary parents and by modifying the visitation scheduled from alternating seven-day periods. The district court, however, maintained the portion of the judgment which ordered Matthew’s continued attendance at St. Louis King of France school. Finding that the heightened Bergeron
 
 [1]
 
 standard was met in this case, we affirm the district court’s judgment.
 

 Facts and Procedural History
 

 This is an ongoing dispute between Emily Silbernagel and Eric Silbernagel that has spanned over a five-year period regarding the custody of their eleven-year old minor son, Matthew. The facts of this case were previously set forth in
 
 Silbernagel v. Silbernagel,
 
 06-879 (La.App. 5 Cir. 4/11/07), 958 So.2d 13. In that case, we affirmed the district court’s ruling which
 
 *726
 
 maintained Emily Silbernagel as the domiciliary parent; ordered Matthew’s continued attendance at |sSt. Louis King of France school; and modified the physical custody arrangement to alternating seven-day periods. Four years after affirming that judgment, the parties are back before us regarding Matthew’s custody.
 

 On January 22, 2008, Eric Silbernagel filed a Rule for Modification of Custody and Visitation in the 24th Judicial District Court in Jefferson Parish wherein he sought to be named Matthew’s domiciliary parent. He also requested that the court order Matthew to remain at St. Louis King of France school in Metairie. That filing was precipitated by Emily Silbernagel’s previous filing, on November 29, 2007, of a Rule for Modification and Change in Venue in the 32nd Judicial District Court in Terrebonne Parish. In that pleading, she requested that visitation be modified from the alternating seven-day periods to allow Eric Silbernagel to visit Matthew every other weekend, alternate holidays, and every other week during the summer when Matthew was out of school. She also requested that Matthew be allowed to attend school in Terrebonne Parish where she resided.
 

 After Emily Silbernagel’s rule was dismissed
 
 [2]
 
 in Terrebonne Parish, Eric Silber-nagel’s rule was heard in Jefferson Parish by a hearing officer on March 7, 2008. The hearing officer denied the motion but recommended that Matthew remain at St. Louis King of France school until mutual agreement by the parties or further order of the court. Eric Silbernagel objected to the hearing officer’s ruling denying modification of custody. The matter was subsequently heard before the district court on August 4, 2009. Emily Silbernagel, Eric Silbernagel, and Elliot Levin, a clinical social worker, testified at that hearing.
 

 |4Emily Silbernagel testified that she has driven Matthew from Houma to Metairie every other week since 2005. She recalled testifying during the April 2006 custody hearing that the drive was not problematic. At that time, however, she had only been making the drive for four to six months. She admitted that now, through the passage of many years, the drive is no longer manageable and endangers Matthews’s life. In fact, Emily Silbernagel’s Rule for Modification and Change in Venue filed in Terrebonne Parish states, “The minor child is placed in danger everyday by being on the highway driving to Metair-ie from Terrebonne Parish approximately 540 miles every other week, for a total of 1,080 miles a month. Defendant, Eric Sil-bernagel agrees that the child is put in danger by being on the highway.”
 

 Emily Silbernagel further testified that since she has been making the commute, she has been involved in two vehicular accidents, one which occurred while Matthew was with her. That accident, which occurred during the school week, required Matthew to miss the next day from school and resulted in a trip to the emergency room where he was found to have a nonthreatening head laceration.
 

 Emily Silbernagel confirmed that Matthew had frequently been absent from and
 
 *727
 
 tardy to school. During the 2006 school year, Matthew was absent three times and tardy nine. In 2007, he was absent seven times and tardy four; and in 2008, he was absent seven times and tardy three. She attributed the absences to illness, stating that he was out once with the flu and that he suffers from allergies and eczema.
 
 [3]
 
 Despite the tardiness and absences, however, Emily Silbernagel testified that Matthew’s performance in school has not suffered.
 

 |fiEric Silbernagel testified that the drive from Houma to Metairie was dangerous for Matthew. He recalled that Matthew told him that he occasionally sleeps in the backseat during the commute. Because of that, Eric Silbernagel was concerned about whether Matthew is properly restrained during the commute. He also testified that on the Friday exchanges, Matthew always appeared to be worn out, as if he had a “hectic” week. And in regards to the school absences, Eric Silbernagel testified that Matthew told him that one of the days he was absent, he and his mother “kind of played hookey.”
 

 Eric Silbernagel testified that it would be in Matthew’s best interest to stay with him in Metairie on the days Emily Silber-nagel did not drive to New Orleans to work because it would reduce the drive time and dangers involved in traveling. He also stated that such an arrangement would give Matthew the opportunity to play sports with his friends in Metairie, which he does not get a chance to do often. He testified that Matthew has talked about attending high school in Metairie with his friends and has never mentioned attending school in Terrebonne Parish.
 

 Eric Silbernagel further testified that Matthew is thriving at St. Louis King of France where he has attended since pre-K and that Emily Silbernagel has never stated to him that she felt Matthew was receiving an inadequate education there.
 

 Elliot Levin, the clinical social worker, who was qualified as an expert in custody matters, testified that Matthew felt comfortable with both parents and that it was in Matthew’s best interest to spend as much time with each parent as possible. However, he found that Matthew’s life was in Metairie. Specifically, he noted that all of his family, both paternal and maternal, were there and that he had no family in Houma. He testified that all of Matthew’s friends, who he enjoyed sports with and attended school with, were also in Metair-ie. He found it surprising [ fithat Matthew did not have any friends in Houma, considering the amount of time he has lived there.
 

 When the hearing concluded, the trial court took the matter under advisement. A judgment was rendered on August 31, 2009. The new judgment removed Emily Silbernagel as the domiciliary parent and made both parties co-domiciliary parents. The judgment also ordered that Matthew would remain at his current school and that he would attend school from Eric Silbernagel’s house on the days that Emily Silbernagel did not have to drive to the New Orleans area for work. That change effectively modified the visitation schedule from the alternating seven-day periods which previously existed.
 

 Emily Silbernagel appeals the district court’s judgment, assigning the following errors: the court erred in naming Eric Silbernagel and Emily Silbernagel co-domiciliary parents; the court erred in ordering Matthew to remain in school at St.
 
 *728
 
 Louis King of France school; and the court erred in modifying the visitation schedule from alternating seven-day periods.
 

 Discussion
 

 Before addressing the merits of the appeal, we must discuss whether the underlying judgment issued on April 7, 2006, is a considered decree or consent decree. That determination is necessary to establish the burden of proof required for any modification thereof. We must also decide whether that judgment is final.
 

 A “considered decree” is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children.
 
 Silbemagel, supra,
 
 at 17. (citation omitted). Once a considered decree has been rendered, the proponent of the change bears the heavy burden of proving that a change of circumstances has occurred, such that the continuation of the present custody arrangement is so deleterious to the child as to justify a ^modification of the custody decree, or that harm likely caused by a change of environment is substantially outweighed by its advantages to the child.
 
 Id.
 
 citing
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193, 1200 (La.1986).
 

 A consent decree, on the other hand, is one in which no evidence of parental fitness is presented.
 
 Id.
 
 (citation omitted). In such a case, the heavy burden of proof rule enunciated in
 
 Bergeron
 
 does not apply.
 
 Silbernagel, supra,
 
 at 18. Rather, a party seeking a modification of a consent decree must prove that there has been a material change of circumstances since the original (or previous) custody decree was entered and that the proposed modification is in the best interest of the child.
 
 Id.
 

 In this case, the underlying custody decree that was rendered on April 7, 2006, was a considered decree wherein the court received evidence of parental fitness regarding Emily and Eric Silbernagel’s ability to exercise care for their minor child. Therefore, Eric Silbemagel, the proponent of change, bears the burden of meeting the heightened
 
 Bergeron
 
 standard to modify that decree.
 

 Eric Silbemagel contends, on the other hand, that the heightened
 
 Bergeron
 
 standard is inapplicable because the April 7, 2006 judgment was not a final judgment due to the following decree contained therein:
 

 IT IS FURTHER ORDERED that the parties appear before this Court for a review of this matter not later than six months following [the] date of this judgment. Mr. Silbemagel will file the appropriate to cause the matter to be set before us.
 

 He argues that this decree makes the judgment provisional, and it was therefore never intended to be a final determination of permanent custody. We disagree.
 

 In
 
 Poole v. Poole,
 
 41,960 (La.App. 2 Cir. 1/24/07), 948 So.2d 382, 385, the trial court rendered a judgment which contained a similar decree whereby the parties were
 
 prohibited
 
 from seeking review or modification of the judgment for 18one year. In that case, the judgment, which named Mr. Poole as the permanent domiciliary parent, contained orders which stated that custody was contingent upon Mrs. Poole behaving appropriately and receiving psychiatric care.
 
 Id.
 
 The second circuit viewed the judgment as an “interim custody order interlocutory in nature.”
 
 Id.
 

 In finding that the judgment was interlocutory in nature, the second circuit in
 
 Poole
 
 found that the award of permanent domiciliary status to Mr. Poole was
 
 contingent
 
 upon Mrs. Poole doing certain things. In this case, however, both Eric and Emily
 
 *729
 
 Silbernagel were awarded equal physical custody of Matthew. Moreover, the April 2006 judgment stated that “if there is a demonstrated on-going problem with Mrs. Silbernagel in the areas of the factors listed above ... we will consider a change from joint to sole custody in favor of Mr. Silbernagel.” Unlike
 
 Poole,
 
 the provision in the Silbernagels’ preexisting judgment did not make custody contingent upon either of the parties doing something. It simply provided that if the problem persisted, custody would be revisited.
 

 Furthermore, the
 
 Poole
 
 court determined that the judgment in that case was not final due to the absence of a trial on the merits.
 
 Id.
 
 In this case, however, a full trial on the merits took place. Therefore, we find that the judgment rendered on April 7, 2006, was a final considered decree which requires Eric Silbernagel to meet the heightened
 
 Bergeron
 
 standard to justify any modification thereof.
 

 First and Third Assignments of Error
 

 Turning to the merits of the case, in her first and third assignments of error, Emily Silbernagel contends that the trial court erred by removing her as the domiciliary parent and designating the parties as co-domiciliary parents and by modifying the visitation schedule from alternating seven-day periods.
 

 |3Because the trial court modified a considered decree, Eric Silbernagel, the proponent of change must meet the heightened
 
 Bergeron
 
 standard to show that the modification was warranted. Failure to meet this burden will result in the reversal of the trial court’s ruling.
 

 The burden of proof enunciated in
 
 Ber-geron
 
 is two-fold. First, Eric Silbernagel must prove that a material change in circumstances has occurred. If successfully proven, he must then show that maintaining the April 2006 judgment is so deleterious to Matthew or that any harm likely to be caused by modifying the judgment is substantially outweighed by its advantages to Matthew.
 

 We initially note, as Emily Silber-nagel does in her brief, that the parties are
 
 physically
 
 in the same situation today as they were when the matter was last litigated in 2006. Matthew still travels the highway approximately 1,080 miles per month and Emily Silbernagel and Eric Silberna-gel are still with their same respective employers. At the time of the April 2006 judgment, however, Emily Silbernagel had only been making the commute for four to six months and was of the opinion that the drive was manageable. But at the August 2009 hearing, she testified that through the passage of many years, she realizes the continuous drive endangers Matthew’s life. Eric Silbernagel also agrees that the drive is dangerous for Matthew. We find that this appreciation of the gravity of the danger, which did not previously exist, constitutes a material change of circumstances in this case.
 

 A further material change of circumstances is Matthew’s maturity over the years and all that it entails. Matthew began making the commute when he was only six-years old — at a time when he was not very involved in many after-school or social activities. As he has matured, however, his interest in these types of activities has piqued.
 

 11ftThe testimony indicates that Matthew has expressed an interest in many sports but was not enrolled due to concerns of whether he would be able to attend all the practices and games. Eric Silbernagel testified that Matthew played soccer for approximately two years but had to stop because Emily Silbernagel stated that it became too difficult to bring Matthew back and forth. Eric Silbernagel testified that Matthew missed two of his school’s quar
 
 *730
 
 terly sock hops. According to his testimony, Matthew said he missed those sock hops because his mother would not bring him because they were on the weekends at night time.
 

 From 2006-2009, Matthew had 17 unexcused absences and 18 tardies. Despite this however, Matthew’s performance at school did not suffer. We must note that Matthew was in elementary school during that time period. He will soon enter high school where his schedule will increasingly become more challenging. Excessive absences and tardiness in the secondary school environment will place his current success at risk.
 

 Taking into account the totality of the circumstances, we find that a material change in circumstances has occurred such that the continuation of the April 2006 custody agreement would be deleterious to Matthew and that modification thereof was warranted.
 

 First, we find that the constant drive between Houma and Metairie places Matthew in continuous danger as evidenced by the accident he has already been involved in. More importantly, Matthew is being deprived of the very essence of his youth. At six-years old, his world consisted primarily of being surrounded by his family. Now, at eleven, Matthew’s world has gotten bigger. He is interested in sports as well as attending other social events with his friends. But because of the commute, he is forced to miss this very important part of his adolescence. Finally, Matthew is excessively absent from and tardy to school. Though this is not [upresently presenting a problem, it will create a challenge in the future as his school workload becomes more rigorous.
 

 A trial court’s determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown.
 
 Silbernagel, supra,
 
 at 17. Accordingly, we find that Eric Silbernagel has met the heightened
 
 Bergeron
 
 standard and that the trial court did not abuse its discretion in modifying the April 2006 judgment.
 

 Second Assignment of Error
 

 In her second assignment of error, Emily Silbernagel contends that the trial court erred in ordering Matthew to remain at St. Louis King of France school. As this Court previously stated, “a child’s successful continuation of his or her education in a proven academic environment is generally found to be in his or her best interest.”
 
 Silbernagel, supra
 
 at 19. (citations omitted). During the trial, Emily Silbernagel, Eric Silbernagel, and Mr. Levin testified that Matthew was thriving at St. Louis King of France and that he was on the Beta Honor Roll. We thus find no error in the trial court’s ruling ordering Matthew to remain at St. Louis King of France school.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court ordering Matthew’s continued attendance at St. Louis King of France school is affirmed. The portion of the judgment naming Eric Silbernagel and Emily Silbernagel as co-domiciliary parents is affirmed. The portion of the judgment ordering Matthew to attend school from Eric Silbernagel’s house when Emily Silbernagel does not have to work in New Orleans is also affirmed. The other portions of the judgment were not appealed.
 

 AFFIRMED
 

 [1]
 

 .
 
 Bergeron v. Bergeron,
 
 492 So.2d 1193 (La. 1986).
 

 [2]
 

 . Emily Silbernagel’s rule was dismissed because Jefferson Parish retained exclusive continuing jurisdiction. La. R.S. 13:1814(A)(1) provides: "Except as otherwise provided in R.S. 13:1816, a court of this state which has made a child custody determination consistent with R.S. 13:1813 or 1815 has exclusive, continuing jurisdiction over the determination until a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.”
 

 [3]
 

 . Although Emily Silbernagel testified that Matthew may have missed school due to illnesses, the absentee report generated by Matthew’s school indicates that all of the absences were unexcused.